UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAYMAN EXPANSIONS AND HOLDINGS SEZC, a foreign corporation, *et al.*,

Plaintiffs,

v.

UEG, LLC, a Utah limited liability company, *et al.*,

Defendants.
______________________________/

Case No. 25-11023

F. Kay Behm
United States District Judge

**OPINION AND ORDER REGARDING THE PARTIES' CONTRACT CONSTRUCTION**

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff Cayman[1] is the owner of registered trademarks and other intellectual property associated with VIVAZEN® branded dietary supplement products, including a trademark in the "FEEL GOOD RELIEF" phrase, which it registered with the United States Patent and Trademark Office on May 28, 2024. (ECF No. 48-2). Plaintiffs' VIVAZEN® products have been on the market since early 2013 and have included the "FEEL GOOD RELIEF" phrase on its

[1] Prior to assigning ownership and related rights to Cayman, Plaintiff Lighthouse was the owner of the FEEL GOOD RELIEF® trademark and other intellectual property associated with VIVAZEN® products.

labels and packaging for over a decade. Defendant UEG's line of business includes the marketing and sale of kratom-based dietary supplements, including those marketed and sold as "ULTIMATE" kratom products. (ECF No. 27, ¶ 15). Defendant LXR's line of business includes the contract manufacturing and packaging of UEG's "ULTIMATE" kratom products. (ECF No. 27, ¶18). In the Complaint in this case, Plaintiffs bring claims of trademark infringement under the Lanham Act, 15 U.S.C. § 1114 for Defendants' use of the "FEEL GOOD" marks, a trade dress infringement claim under 15 U.S.C. § 1125(a) for its ULTIMATE Trade Dress, a trademark infringement claim under 15 U.S.C. § 1125(a) for false and misleading designations of origin, for indirect trademark infringement, for common law trademark infringement for the "FEEL GOOD" marks, for state/common law trade dress infringement, a Michigan Consumer Protection Act claim, an unjust enrichment claim, a false advertising claim under the Lanham Act, and a breach of contract claim for violating the Settlement Agreement. (ECF No. 26).

In 2015, Plaintiffs sued Defendants in the case *United Naturals, Inc. v. LXR Biotech, LLC*, Case No. 15-14299 (E.D. Mich.) for selling an alleged knock-off of its VIVAZEN® product. (ECF No. 48-3). In that case, Plaintiffs

alleged an infringement of their trade dress associated with the VIVAZEN® products, which included, among other features, a "red banner with stylized white block lettering below the VIVAZEN logo bearing the words "FEEL GOOD RELIEF." (*Id*. at ¶ 35). Plaintiffs did not assert any trademark rights in the "FEEL GOOD RELIEF" phrase in the 2015 case. The parties resolved the 2015 case through a Settlement Agreement dated September 30, 2016. (ECF No. 53).

Section 1 of the Settlement Agreement prohibits Defendants from selling any products bearing Plaintiffs' Asserted Trade Dress or the Vivazen term or any design likely to cause confusion with Plaintiffs' Asserted Trade Dress or the Vivazen trademark or trade name:

> 1. Prohibition. Except as provided in Section 2, Defendants warrant that Defendants and each one's servants, agents, and employees have discontinued manufacturing, selling, and distributing the Accused Products and all other products bearing Plaintiffs' Asserted Trade Dress or the Vivazen term, in any manner, including as a trademark or trade name, and agree not to manufacture, sell, lease, transfer, distribute, order, source, import, advertise, market, offer for sale, or otherwise commercialize any products bearing Plaintiffs' Asserted Trade Dress or the Vivazen term as trademark or trade name or a design likely to cause confusion with Plaintiffs' Asserted Trade Dress or the Vivazen trademark or trade name. Defendants will not object to, or take any action inconsistent with, Plaintiffs' full ownership of

> and exclusive rights to use Plaintiffs' Asserted Trade Dress or the Vivazen term including, but not limited to, as a trademark, domain name, trade name, company name, and in all forms of social media.

(ECF No. 53, PageID.518). Plaintiffs' Asserted Trade Dress is defined in § H of the Settlement Agreement as follows:

> H. The trade dress rights at issue in the Litigation ("Plaintiffs' Asserted Trade Dress") is described in Plaintiffs First Amended Complaint as featuring, among other things:
>
> > a. a distinctive black background comprising substantially all of the bottle;
> >
> > b. a red heart-shaped winged design in the center of the bottle;
> >
> > c. the trade name "Vivazen" in white stylized block lettering with a black outline, over the red heart-shaped winged design, with the letters "Viva" displayed directly above the letters "Zen"; and
> >
> > d. a banner with lettering near the top of the product indicating the type of benefit provided.
>
> Plaintiffs' Asserted Trade Dress is also illustrated on Exhibit A. The examples and descriptions identified herein, including on Exhibit A, are collectively referred to as Plaintiffs' Asserted Trade Dress.

(ECF No. 53, PageID.517). Exhibit A to the Settlement Agreement includes the following illustration:




Section 8 of the Settlement Agreement allows Defendants to continue to sell two existing products – "Ulta Enhanced Gold" and "Private Bali Reserve" with the phrase "FEEL GOOD" on them:

> 8. Other Products. Subject to the prohibitions of Section 1, including the prohibition on Defendants using the term Vivazen including as a trade name or company name after the end of the Sell-Off Period described in Section 2, Plaintiffs agree that Defendants' manufacture, sale, lease, transfer, distribution, advertisement, marketing, offer for sale, or other commercialization of any products bearing the "Ultra Enhanced Gold" and "Private Bali Reserve" names, marks, and trade dress shown in the forms of Exhibit C docs not and shall not infringe, dilute, constitute unfair competition or otherwise implicate Plaintiffs' rights in the Vivazen trademark and Plaintiffs' Asserted Trade Dress. Plaintiffs agree that they will not object to or take any action to interfere with Defendants manufacturing, advertising, selling, distributing, or taking any other actions with respect to Ultra Enhanced Gold and Private Bali Reserve products after the Effective Date.

(ECF No. 53, PageID.521-22).

The Settlement Agreement contains mutual release provisions where Defendants agree to a release of "all past, present, and future claims, demands, rights, causes of action... whatsoever which [Defendants] have or might have or acquired, whether known or unknown... which arise from or relate to the allegations or facts set forth in any pleadings... or other papers filed in the [2015] Litigation;". (ECF No. 53, PageID.219-520). Plaintiffs also agree to the following release:

> 5.1 Plaintiffs' Release of Claims. Plaintiffs for themselves and their predecessors, successors, affiliates, licensees, heirs, assigns, administrators, agents, members, shareholders, directors, principals, officers, partners, employees, agents, contractors, attorneys, and representatives, hereby release and forever discharge Defendants and their subsidiaries, divisions, affiliates, predecessors, successors, assigns, members, shareholders, directors, principals, officers, partners, employees, agents, contractors, customers, and attorneys (collectively the "Plaintiffs' Releasees"), from any and all past, present, and future claims, demands, rights, causes of action, petitions, judgments, executions, damages, liabilities, costs, or expenses (including legal/attorney's fees) whatsoever which Plaintiffs have or might have or acquire, whether known or unknown, actual or contingent, relating to or arising from any claims which were made, or could have been made, or which arise from or relate to the allegations or facts set forth in any submissions, pleadings, petitions, motions, requests, statements, or other papers filed in the Litigation or TTAB Proceeding. The Parties to this Agreement

> acknowledge that the release set forth in this Section is intended to be general and absolute and relieve all Plaintiffs' Releasees from any possible claim by or liability to Plaintiffs that might conceivably exist arising from or relating to waived matters prior to the Effective Date.

(ECF No. 53, PageID.519).

Sometime after the parties executed the Settlement Agreement, Defendants began to use the phrase "FEEL GOOD" on the labels, packaging, and displays for their "ULTIMATE" branded kratom products:




Plaintiffs assert that this use of "FEEL GOOD" on new products violates the parties' Settlement Agreement, which Plaintiffs' contend limits Defendants to using "FEEL GOOD" on the two products identified in § 8. Defendants, on the other hand, maintain that Plaintiffs gave up the ability to sue them for infringement of the alleged trademark "FEEL GOOD RELIEF" in the release.

The parties offer differing interpretations of various provisions of the Settlement Agreement and their impact on the claims in this case. The parties ask the court to resolve these conflicts and have provided briefing addressing their various claims in this regard. (ECF Nos. 48, 49, 50, 51). The court held a hearing on November 18, 2026.

## II. LEGAL STANDARD

A settlement agreement is interpreted according to the principles governing the interpretation of contracts. *Walbridge Aldinger Co. v. Walcon Corp.*, 207 Mich. App. 566, 571 (1994). A court's primary goal in interpreting a contract is to honor the intent of the parties. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 473 (2003). Contractual language is to be given its ordinary and plain meaning. *Singer v. American States Ins.*, 245 Mich. App. 370, 374 (2001). A court should construe a contract so as to give effect to every word, clause, and phrase, and avoid rendering any part of the contract surplusage or nugatory. *Klapp*, 468 Mich. at 467. Further, an unambiguous contract must be enforced as written. *Farmers Ins. Exch. v. Kurzmann*, 257 Mich. App. 412, 418 (2003). A contract is unambiguous if it "fairly admits of but one interpretation." *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999).

## III. ANALYSIS

### A. Does Defendants' Use of "Feel Good" Violate the Settlement Agreement?

Plaintiffs claim that Defendants use of the FEEL GOOD phrase on their new product line violates the Settlement Agreement. According to Plaintiffs, § H defines the Asserted Trade Dress to include the FEEL GOOD RELIEF phrase and § 1 expressly prohibits Defendants from manufacturing, distributing, advertising, marketing, or selling any products bearing Plaintiffs' Asserted Trade Dress or any design likely to cause confusion with the trade dress. Thus, Plaintiffs argue, there is no question that the Settlement Agreement prohibited Defendants from any continued use of FEEL GOOD or any other phrases confusingly similar to FEEL GOOD RELIEF, except as provided in § 8. Plaintiffs contend that the carve-out in § 8 permits Defendants to sell two specifically identified products bearing the FEEL GOOD phrase.

In response, Defendants first point out that the phrase FEEL GOOD RELIEF was not addressed in the trademark context in the Settlement Agreement, but only in the trade dress context. Specifically, FEEL GOOD RELIEF was one of five elements of Plaintiffs' alleged VIVAZEN trade dress. (ECF No. 48-3, ¶ 35). According to Defendants, § 1 of the Settlement

Agreement only prevents them from using that trade dress, which is the combination of design features, not FEEL GOOD RELIEF on its own. Defendants also point out that the Settlement Agreement allows them to continue to sell two products bearing the FEEL GOOD phrase. This shows, according to Defendants, that Plaintiffs considered the VIVAZEN trade dress to encompass something more than just the phrase FEEL GOOD RELIEF.

In the court's view, the Settlement Agreement does not expressly bar Defendants from using the FEEL GOOD phrase, so long as its use does not otherwise violate the provisions governing the VIVAZEN trade dress. This is so because nothing in the Settlement Agreement specifically bars the use of this phrase by itself. "Trade dress" refers to "the image and overall appearance of a product." *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1238-39 (6th Cir. 1991) (citation omitted); *see also SK & F Co. v. Premo Pharm. Labs., Inc.*, 481 F. Supp. 1184, 1187 (D. N.J. 1979) (stating that "[t]rade dress is a complex composite of features" including, inter alia, size, color, texture, and graphics, which must "be considered together, not separately"), *aff'd*, 625 F.2d 1055 (3d Cir. 1980)) (cited with approval in *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 630 (6th Cir. 2002)). Here, FEEL GOOD RELIEF is but one element of the VIVAZEN trade dress identified in the

Settlement Agreement. Unless the use of FEEL GOOD otherwise violates the Asserted Trade Dress or constitutes a "design likely to cause confusion with Plaintiffs' Asserted Trade Dress," its use is not barred by the Settlement Agreement. The court finds that this conclusion is further supported by § 8, which allows the sale of two specific products bearing the FEEL GOOD phrase. This provision not only allowed the sale of two products bearing the FEEL GOOD phrase, but Plaintiffs "expressly agree[d]" that the trade dress of those products as illustrated on Exhibit C to the Settlement Agreement "does not and shall not infringe, dilute, constitute unfair competition or otherwise implicate Plaintiffs' rights in the VIVAZEN trademark and Plaintiffs' Asserted Trade Dress." (ECF No. 53, PageID.521-22).




(ECF No. 53, Exhibit C, PageID.533). Thus, Plaintiffs agreed that the design of those excepted products, which included the FEEL GOOD phrase, did not

violate its Asserted Trade Dress. This further suggests that use of FEEL GOOD on its own did not necessarily violate the Asserted Trade Dress and thus was not barred by the Settlement Agreement.

B. Are Plaintiffs' Trademark Infringement Claims Barred by the Release?

In the Settlement Agreement, Plaintiffs agreed to release "any and all past, present, and future claims, demands, rights, causes of action, petitions, judgments, executions, damages, liabilities, costs, or expenses (including legal/attorney's fees) whatsoever which Plaintiffs have or might have or acquire, whether known or unknown, actual or contingent, relating to or arising from any claims which were made, or could have been made, or which arise from or relate to the allegations or facts set forth in any submissions, pleadings, petitions, motions, requests, statements, or other papers filed in the Litigation or TTAB Proceeding." (ECF No. 53, § 5.1). The release further provides that it "is intended to be general and absolute and relieve all [Releasees] from any possible claim by or liability to Plaintiffs that might conceivably exist arising from or relating to waived matters prior to the Effective Date." *Id*. Further the parties acknowledged that they and their counsel had "adequate opportunity to make whatever investigations and

inquiries they wish to make or deem necessary in connection with the release of claims under this Section 5." *Id*. at § 5.4.

Defendants contend that the broad release to which Plaintiffs agreed bars their trademark infringement claims. First, they say that Plaintiffs' trademark infringement claims relate to or arise from a claim that could have been made in the 2015 case. Defendants point out that Plaintiffs were using FEEL GOOD RELIEF at the time of the 2015 complaint and mentioned it in their complaint as part of their VIVAZEN trade dress. Second, Defendants assert that the trademark claims arise from or relate to allegations or facts in the 2015 case, as the complaint in the 2015 case includes a comparison of FEEL GOOD RELIEF and FEEL GOOD, even though no trademark claim was pleaded.

Plaintiffs argue that Defendants' interpretation of the release language would effectively re-write the release to include claims that did not exist at the time of the 2016 Settlement Agreement regarding Defendants' products that did not then exist. Plaintiffs say that Defendants' interpretation of the release language ignores the provision that released claims only included matters that existed "prior to the Effective Date," or September 30, 2016. Plaintiffs maintain that their trademark claims could not have been asserted

in the 2015 case because the products at issue in this case did not then exist and Plaintiffs did not obtain a federal trademark registration for FEEL GOOD RELIEF until 2024.

In the court's view, Plaintiffs' trademark claims are not barred by the release. While it is true that Plaintiffs could have brought a common law trademark claim in the 2015 litigation based on Defendants' use of FEEL GOOD on the products at issue in that case, they could not have brought such a claim as to the Defendants' products at issue in this case. Thus, the common law trademark claim at issue here could not have been brought in the 2015 case. And given that their federal trademark registration did not occur until 2024, Plaintiffs certainly could not have brought a statutory trademark claim as to the Defendants' products at issue here, in the 2015 case.

The question then becomes whether the trademark claims asserted in this case "arise from or relate to the allegations or facts set forth in any submissions, pleadings, petitions, motions, requests, statements, or other papers filed in the [2015] Litigation or TTAB Proceeding." Defendants argue that the trademark claims fall within the scope of the release, which encompasses "future" claims that Plaintiffs "might have or acquire" so long

as they arise from or relate to the claims in the 2015 case or the allegations or facts set forth in the pleadings in that case. Do the trademark infringement claims regarding the phrase FEEL GOOD RELIEF arise from or relate to the allegation that FEEL GOOD RELIEF was part of Plaintiffs' VIVAZEN trade dress claim in 2015? The court finds that they do not. Again, while the phrase FEEL GOOD RELIEF was raised in the 2015 litigation as part of the VIVAZEN trade dress claim, the claims in this case relate to products produced by Defendants that did not then exist. While this provision would bar future trademark infringement claims as to the products at issue in the 2015 case or any of Defendants' products that then existed, it does not bar future trademark claims regarding products not in existence at the time of the agreement. In the court's view, the trademark claims here arise from new facts that post-date the 2016 Settlement Agreement, not facts alleged in the pleadings of the 2015 case. Accordingly, the court concludes that the trademark claims here did not arise from or relate to the allegations or facts set forth in the 2015 case.

C. Does Defendants' Counterclaim Violate the Settlement Agreement?

In Count I of the Counterclaim, Defendants allege that Plaintiffs released claims against them arising from the use of the words FEEL GOOD

and covenanted not to sue them for using the words FEEL GOOD. By virtue of Counts I (statutory trademark infringement), III (false/misleading designations), IV (indirect trademark infringement), V (common law infringement), VII (MCPA), and VIII (unjust enrichment) of the Complaint, Defendants allege that Plaintiffs attempt to prohibit them from using the phrase FEEL GOOD and thus breached the release and covenant not to sue. Plaintiffs point to § 1 of the Settlement Agreement, which prohibits Defendants from "object[ing] to, or tak[ing] any action inconsistent with, Plaintiffs' full ownership of and exclusive rights to use Plaintiffs' Asserted Trade Dress." Plaintiffs argue that Count I of the counterclaim violates § 1 by improperly invoking the Covenant Not to Sue provision of § 5.6 in an effort to prevent Plaintiffs from enforcing rights the Settlement Agreement expressly protects—i.e. the prohibition on Defendants' use of the FEEL GOOD phrase.

As set forth above, the court has concluded that Defendants' use of the FEEL GOOD phrase does not necessarily violate the Settlement Agreement. Again, unless the use of FEEL GOOD otherwise violates the Asserted Trade Dress or is part of a "design likely to cause confusion with Plaintiffs' Asserted Trade Dress," its use is not barred by the Settlement Agreement. Thus, Defendants' use of FEEL GOOD in the circumstances presented in this case

may or may not be prohibited by the Settlement Agreement. If Defendants' use of FEEL GOOD in this case constitutes a prohibited use under the Settlement Agreement, then Count I of the counterclaim could also constitute a violation of § 1. However, if it is not a prohibited use under the Settlement Agreement, then Count I would not be a violation of § 1. Because the court is not presently tasked with determining whether Defendants' present use of FEEL GOOD violates the Settlement Agreement, it cannot definitively say whether Count I of the counterclaim violates § 1.

Plaintiffs argue that Defendants' trademark cancellation claim is also barred by § 1 because it is inconsistent with Plaintiffs' rights in the FEEL GOOD RELIEF component with the Asserted Trade Dress protected by the Settlement Agreement. The covenant not to sue only applies to claims "based in whole or in part on the released claims." (ECF No. 53, § 5.6). The court has concluded that Plaintiffs' trademark claims in the phrase FEEL GOOD RELIEF are not barred by the release contained in the Settlement Agreement. The court likewise concludes that the trademark cancellation claim is similarly not barred by the release of Defendants, which contains comparable language limiting the release of "future claims" to those "relating to or arising from any claims which were made, or could have been made, or

which arise from or relate to the allegations or facts set forth in any submissions, pleadings, petitions, motions, requests, statements, or other papers filed in the Litigation or TTAB Proceeding." (ECF No. 53, § 5.2). Like the trademark claims themselves, the trademark cancellation claim could not have been made in the 2015 litigation and does not relate to facts or allegations contained in the 2015 pleadings, given that no trademark claim was asserted at that time. For these reasons, the court finds that Count II of the counterclaim is not barred by the release in the Settlement Agreement. Thus, its assertion is also not barred by the covenant not to sue, which only applies to released claims.

**SO ORDERED.**

Date: November 20, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge